UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BOBBY C. REID, JR.,

                        Plaintiff,                      CASE # 1:18-cv-00069

v.                                                           MEMORANDUM
                                                           DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

## **INTRODUCTION**

Pending before the Court is Plaintiff's motion for judgment on the administrative record. *See* Docket Entry ("DE") 12. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was "not disabled," and therefore not entitled to Disability Insurance Benefits ("DIB") or Supplement Security Income ("SSI"). (*See* Administrative Transcript (DE 8) at 7-21).[1] This matter has been referred to the undersigned, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and the consent of the parties. *See* DE 4.

Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative record (DE 12) is **GRANTED**, the decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this order.

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "Tr." followed by the corresponding page number(s) as denoted by the large black print on the bottom right corner of each page.

I.  **FACTS AND PROCEDURAL HISTORY**

On September 20, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (Tr. 192-201). His alleged disability onset date was August 29, 2013, but he later amended it to August 29, 2015. (Tr. 10, 284). His date last insured is September 30, 2015[2]. (Tr. 12). Plaintiff's application was initially denied, after which he timely requested a hearing before an ALJ. On February 26, 2016, Plaintiff appeared before the ALJ Bryce Baird (Tr. 21), who issued a written decision on October 5, 2016 denying Plaintiff's application. (Tr. 7-21). On November 17, 2017, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

As part of the decision the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

2. The claimant has not engaged in substantial gainful activity since August 29, 2015, The amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hypertension, obesity, diabetes with neuropathy, bilateral hallux valgus, hallux rigidus and hallux limitus, right foot degenerative changes of the great toe metacarpal phalangeal ("MTP") joint, right foot great toe MTP joint arthritis (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), including lifting and carrying up to ten pounds frequently and twenty pounds occasionally, except the claimant: can sit for a total of six hours; can stand

---

[2] Update queries in the file indicate that the date last insured was September 31, 2017 at the time of the hearing, presumably due to the continued employment through the date of the decision. (Tr. 213).

2

and/or walk for a total of four hours; must be able to sit for up to fifteen minutes after up to one hour of standing or walking, remaining on task whether sitting, standing or walking; cannot use foot controls with either foot; cannot climb ladders, ropes or scaffolds; cannot crawl; can frequently balance; and cannot be exposed to excessive vibration.

6. The claimant is unable to perform any past work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 14, 1967, and was 47 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 29, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-20).

On appeal, Plaintiff submits one assertion of error: (1) the ALJ failed to properly evaluate the medical opinions of a treating source. DE 12 at 11. Plaintiff therefore requests that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id*. at 18.

## II. ANALYSIS

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a

correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

The Commissioner employs a five-step sequential evaluation process in considering whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

4

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him to perform the requirements of his past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he is not disabled. *Id.* If he cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

### B. The Commissioner's Decision

The ALJ resolved the current Plaintiff's claim at step five of the five-step process. Although Plaintiff was found to have met the first two steps, the ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and was therefore not presumptively disabled. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed him to perform work at light exertional levels with express limitations to account for his severe impairments, and that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite such limitations. (Tr. 7-21).

### C. Assertions of Error

#### 1. ALJ failed to properly evaluate Dr. Maulucci's Treating Medical Opinions

Plaintiff argues the ALJ failed to acknowledge a 2014 opinion by treating podiatrist Dr. Maulucci and improperly rejected her 2016 opinion. Records indicate Marina Maulucci, D.P.M.,

5

has treated the claimant since October 2013. (Tr. 444). Treatment has included medication, orthotics, and injections. (Tr. 448, 453, 455, 457, 491, 496, 500, 713).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c). " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

On February 22, 2016, Dr. Maulucci provided a medical opinion regarding Plaintiff's foot impairments and diabetes with neuropathy. (Tr. 499-503). She opined, among other things, that: his experience of pain was severe enough to often interfere with attention and concentration; he was only able to sit for a total of 4 hours in an 8-hour workday and stand and/or walk for a total of about 2 hours in an 8-hour workday; he needed a job that permitted shifting positions at will; he sometimes needed unscheduled breaks during the workday; and he would likely be absent for about 2 days per month due to his impairments or treatment. (Tr. 499-502). The ALJ conclusory stated that he gave this opinion little weight because "the limitations stated are not consistent with the claimant's level of care, findings on diagnostic testing, clinical examination, and the absence of medical evidence supporting his allegation of increasing symptoms and functional limitations coinciding with his amended alleged onset date." (Tr. 19).

The ALJ's single sentence explanation was not sufficient to show he had considered all the regulatory factors for evaluating a treating physician's opinion." *See Coleman v. Berryhill,* 2018 WL 4177939, at *3 (W.D.N.Y. Aug. 3, 2018) ("The ALJ's rationale that Dr. Gawinski's opinion was inconsistent with the treatment notes is difficult to evaluate because he did not cite to any specific records that were inconsistent."); *see also Doria v. Colvin,* 2014 WL 3109184, at *3 (W.D.N.Y. July 8, 2014) ("While the ALJ is free is assign little or even no weight to a treating source under certain conditions, the ALJ's failure to elaborate these findings is troubling. The ALJ does not explain what 'medical evidence' the ALJ's opinion is inconsistent with.").

The ALJ did reference some of the factors, but they would be contrary to his conclusion to give little weight and the ALJ did not discuss why they were discredited. The ALJ specifically stated that Plaintiff had been seen by the specialist ten times for diabetic neuropathy, hallux limitus and hallux rigidus, marked by pain at the first metatarsal phalangeal joints of both feet, crepitus on

7

range of motion and a limited range of motion. (Tr. 18). This finding goes to the frequency, length and nature of the treatment and that the physician was a specialist. It was internally consistent and also consistent with Plaintiff's own testimony regarding limitations.

There is also objective medical evidence in the record that provide support for the opinion that is contrary to the vague conclusory statement by the ALJ. Findings on diagnostic imaging from before the amended onset date are less severe than those after the amended onset date. A right foot X-ray conducted on July 9, 2013 revealed hallux valgus and mild degenerative change of the great toe MTP joint. (Tr. 336). However, a right foot X-ray conducted on November 18, 2015 revealed mild arthritis in the first metatarsal phalangeal joint; mild arthritis in the proximal interphalangeal joint of the right foot and hallux abducto valgus of the right foot; positive Martel sign at the medial aspect of the proximal phalanx at the interphalangeal joint and the medial aspect of the first metatarsal head both consistent with gouty changes; and bipartite tibial sesamoid. (Tr. 495). Similarly, although examinations were not performed more frequently, findings during examinations also indicated increased symptoms. Examinations before the alleged onset date revealed: moderate pronation in both feet; pain to the right hallux bunion bump and with deep palpation; functional hallux limitus; pain in the right first MTP joint; limited range of motion; and crepitus in the IP joint. (Tr. 398, 448, 453, 455, 457). Physical examinations after the alleged onset date revealed additional objective findings of hammertoe deformity and lack of sensation to pain touch, or light temperature in his lower extremities to his ankles. (Tr. 491, 542, 713). Medications had also been changed from Ibuprofen to Meloxicam, Gabapentin, and Lortab. (Tr. 448, 453, 491, 496, 500, 713).

After discussing this opinion, the ALJ ended the RFC analysis by stating the assessment was supported by "the objective medical evidence" and the opinion of an examining source,

8

referring to a consultative exam that was prior to the amended onset date. (Tr. 19). This conclusory statement is contrary to the substantial evidence of record as discussed above. The reliance on the findings and opinion of a consultative exam, prior to the amended onset date when the claimant was still working, is also related to Plaintiff's argument regarding the ignoring of a treating source opinion from the same time.

Plaintiff alleges it was an error for the ALJ not to evaluate a 2014 opinion by Dr. Maulucci, particularly since a consultative examiner's opinion from prior to the amended onset date was given great weight. On June 11, 2014[3], at their sixth appointment together, Dr. Maulucci stated she discussed limitations with the claimant due to his foot pain. Her notes stated that "all activities which involve dorsiflexion of the joints are to be limited, minimalized". Additionally, she stated that specifically, squatting, standing on the toes, climbing, hill walking and stairs should be limited. Standing was limited to no more than 30 minutes due to fatigue and pain. Lastly, driving was advised to be done "cautiously". (Tr. 453). The ALJ did mention this medical note in the decision but did not treat it as a medical opinion. (Tr. 16).

Defendant's assertion that this was not a medical opinion, but rather recommendations to alleviate pain, is incorrect. *See* 20 C.F.R. 404.1527(a)(1) (2017) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). The treatment note states, "we discussed his foot pain and limitations" and goes on to state activities that should be "limited". (Tr. 453). Defendant states that the "ALJ discussed and considered the recommendation" but the

---

[3] The ALJ decision and Defendant's brief both state the date of this appointment was August 11, 2014. Although the first page from the treatment notes could possibly be an "8", the signature page is clearer and indicates the appointment was on "06/11/2014". (Tr. 453).

9

decision shows just one sentence that simply summarized the entire treatment note and limitations. (Tr. 16). There were no explicit findings made by the ALJ regarding these limitations by a treating source. *See Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997); *see also generally Burgess v. Astrue*, 537 F.3d 117, 132 (2d Cir. 2008) (finding remand was warranted because "the reports of [one of the plaintiff's treating physicians] . . . w[ere] not expressly mentioned by the ALJ"); *see also Hall v. Colvin,* 2016 WL 6989806, at *8 n.3 (N.D.N.Y. Nov. 29, 2016) ("Because '[t]he ALJ did not articulate this reasoning in his decision, the court cannot accept such post hoc rationalization.'").

The fact that this opinion was prior to the amended onset date does not relive the ALJ of his duty to address the limitations opined by the treating source. *See Crocco v. Berryhill*, 2017 WL 1097082, at *16 (E.D.N.Y. Mar. 23, 2017) (finding the ALJ's RFC determination was not supported because he ignored medical opinions with findings that contradicted his findings). Lastly, it is noted that the ALJ gave "significant weight" to an opinion from the Consultative Examiner that was also prior to the amended onset date, in December 2013. (Tr. 18). This therefore is contrary to any arguments that opinions prior to the amended onset date are not relevant or to be considered. It is not a harmless error as the restrictions are greater than those opined by the consultative examiner. Additionally, as discussed above, this opinion could be used to show progression of the claimant's impairments and limitations, therefore lending greater support for the subsequent opinion. By not considering the opinion properly, the ALJ has not based the RFC on substantial evidence.

### III.  CONCLUSION

For the above stated reasons, it is ordered that Plaintiff's motion for judgment on the pleadings is GRANTED, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

Dated:  June 25, 2019
      Rochester, New York         _J. Gregory Wehrman_
                                                HON. J. Gregory Wehrman
                                                United States Magistrate Judge